510 So.2d 472 (1987)
John SAWYER d/b/a Lakeland Plantation & Southern Farm Bureau Casualty Insurance Company
v.
Rufus HEAD, Deceased, DEPENDENTS OF.
No. 55682.
Supreme Court of Mississippi.
March 18, 1987.
Rehearing Denied August 19, 1987.
*473 Samuel E. Scott, Keith R. Raulston, R. Nash Neyland, Heidelberg, Woodliff & Franks, Jackson, for appellants.
John S. Holmes, Yazoo City, James C. Patton, Jr., Barrett, Barrett & Barrett, Lexington, for appellee.
Before WALKER, C.J., and PRATHER and GRIFFIN, JJ.
WALKER, Chief Judge, for the Court:
This appeal is prosecuted from the Circuit Court of Holmes County, Mississippi and involves a claim for Workers' Compensation Benefits.
On June 19, 1973, Roosevelt Head, Sr., Roosevelt Head, Jr., Rufus Head, Lester D. Johnson and Arthur Lee Mason, employees of Lakeland Plantation, were involved in a motor vehicle collision. At the time of the accident the four were enroute to lunch in a pickup truck provided by Lakeland Plantation and driven by Roosevelt Head, Sr., a co-employee. Roosevelt Head, Sr. was allowed to use the truck to transport himself and those workers in need of transportation not only to and from work but also to and from lunch. Mason and Johnson were severely injured in the accident and the two young boys, Rufus Head and Roosevelt Head, Jr. and Roosevelt Head, Sr. were killed.
In 1975 the dependents of Rufus Head (hereinafter claimants) filed a Motion to Controvert with the Workers' Compensation Commission. Thereafter, a civil action sounding in tort was filed by the claimants against Frederick A. Ahner and C.D. Kilgore d/b/a Vicksburg Truck Center, the third party whose truck collided with the Lakeland Plantation vehicle; Ruby Moore, administratrix of the estate of Roosevelt Head, Sr., deceased; George Langdon, farm manager; and John Sawyer, owner of Lakeland Plantation. Prior to trial the claimants entered into a settlement and release agreement in 1980 whereby they received the following:

*474 1. Two Thousand Dollars ($2,000.00) paid on behalf of Frederick Ahner and Kilgore d/b/a Vicksburg Truck Center.
2. Thirty-Five Hundred Dollars ($3,500.00) on behalf of John Sawyer.
3. Fifty-Five Hundred Dollars ($5,500.00) on behalf of George Langdon and Ruby Moore administratrix of the estate of Roosevelt Head, Sr.
In 1981 a hearing was held before the administrative judge of the Mississippi Worker's Compensation Commission on the claim for Worker's Compensation benefits. With regard to those issues pertinent to this appeal he found:
1. At the time of the accident Rufus Head was acting in the course and scope of his employment for Lakeland Plantation;
2. At the time of his death Rufus Head left surviving him his mother, three sisters and two brothers as his dependents;
3. The employer and carrier were to be given credit against the award made to the dependents of Rufus Head, for sums received by them in settlement of third party actions and direct suits against the employer arising out of the accident causing the death of Rufus Head.
Following the issuance of the administrative judge's order the claimants filed their petition for review with the full commission. Following review by the full commission the order of the administrative judge was affirmed in part and amended in part as follows:
The administrative judge erred in allowing defendants credit against their workmen's compensation liability for those sums paid to claimants by their employer and co-employees pursuant to the settlement and release agreement entered into. Thus the defendants are entitled only to a credit against their workmen's compensation liability equal to the amount paid the claimants pursuant to their settlement of the tort claim against the third party, Ahner and Kilgore d/b/a Vicksburg Trucking.
On appeal to the Circuit Court of Holmes County the finding of the commission was affirmed in toto. The appellants, John Sawyer d/b/a Lakeland Plantation and Southern Farm Bureau Casualty Insurance Company, aggrieved with the finding of the Worker's Compensation Commission and affirmance thereof by the Circuit Court, have perfected an appeal to this Court.

I.

The Circuit Court erred in upholding the Workers' Compensation Commission's decision that the death of Rufus Head occurred out of and within the course and scope of his employment.
Following the issuance of the administrative judge's order the claimants prosecuted their appeal to the full commission specifically assigning as error the amount found to be the deceased's average weekly salary and the allowance of a credit to the appellants. Sawyer and his carrier did not cross-appeal to the full commission so as to preserve this assignment.
In order to preserve a point for review by the Supreme Court, the point must be presented not only to the commission but also to the circuit court by an assignment of error there by direct or cross-appeal. Dunn, Mississippi Workmen's Compensation § 291 (2d edition 1967; 3rd edition 1982). Cf. Coulter v. Harvey, 190 So.2d 894 (Miss. 1966); Dixie Pine Products Company v. Bryant's Dependents, 228 Miss. 595, 89 So.2d 589 (1956).
Although appellant states that this assignment "was perserved for appeal in the assignment of errors filed with the Circuit Court of Holmes County," we find no assignment presented to the circuit court wherein he specifically asserted it was error for the commission to hold that the death of Rufus Head arose out of and occurred within the course and scope of his employment. This assignment was waived by the appellants when they failed to perserve this issue for review by this Court.

*475 II.

The Circuit Court erred in upholding the Workers' Compensation Commission's decision that Appellees were "dependents" of Rufus Head, deceased.
Mississippi Code Annotated § 71-3-25(g) (1972) states, "All questions of dependency shall be determined as of the time of the injury. A surviving wife, child, or children shall be presumed to be wholly dependent. All other dependents shall be considered on the basis of total or partial dependence as the facts may warrant."
The condition of dependency is a fact determination to be made as of the time of a worker's death. Ingalls Shipbuilding v. Dependents of Sloane, 480 So.2d 1117 (Miss. 1985).
The term "dependent" must be liberally interpreted, and includes those partially dependent as well as those wholly dependent. One is dependent if he relies upon the employee in whole or in part for his support. The statute's purpose is to provide the workman's dependents with something in substitution for what has been lost by the workman's death. Claimant must show that he had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing future support and maintenance is the principal criterion. Union Camp, Inc. v. Dependents of McCall, 426 So.2d 796 (Miss. 1983); Mid-State Paving Company v. Farthing, 233 Miss. 333, 101 So.2d 850 (1958). In Dunn, Mississippi Workmen's Compensation § 226 (2nd edition 1967; 3rd edition 1982) dependency is explained as follows:
In determining dependency, reference is to be had to the time of death and shortly prior thereto and it is the expectation of future support as of the time of death, judged by the past, which controls.
As to the meaning of the support requirement in determining dependency, the claimant must have looked to and relied upon contributions from the employee, in whole or in part, as a means of maintenance in accordance with his accustomed mode of life. This has reference to living expenses, and the contributions must be substantial, as distinguished from minor or incidental gratuities.
However, if the test, above stated, is met by one claiming partial dependency, it is not material (1) that contributions are made or expected at irregular intervals, or (2) that the claimant was able to maintain himself, or (3) that claimant was possessed of some property, or (4) that claimant was supported in part by others or from other sources, or even (5) that the claimant had an income which exceeded that of the employee. The support requirement, moreover, does not mean that claimant must show that he will be destitute and without the bare necessities of life.
Rufus was twelve (12) years of age when he died. He was living in Tchula, Mississippi with his mother, three (3) sisters and two (2) brothers.
Although Rufus had only been working at Lakeland Plantation for one and one-half (1 1/2) days prior to his fatal injury, this was not the first job that he had ever had. During the school year Rufus attended the Tchula Attendance Center, and it was only during the summer months that he worked. In the summer he would obtain work raking yards, mowing yards or chopping cotton. Rufus' mother testified that any money Rufus earned was turned over to her to help support his brothers and sisters. It was customary for Rufus' brothers and sisters to obtain odd jobs and give the money to their mother to use for household expenses. The money earned by the children during the summer months, as well as by Mrs. Head when she could work, was used to supplement the family's welfare check. The evidence is clear that Mrs. Head depended on all of her children to support the family when able to do so.
The record clearly establishes the fact that Rufus Head's mother, brothers and sisters were dependent upon him at the time of his death and were thus entitled to worker's compensation death benefits. The finding of dependency by the full commission *476 and holding of the circuit court in that regard is affirmed.

III.

The Circuit Court erred in upholding the Workers' Compensation Commission's decision that Appellants were not entitled to a credit against the benefits awarded to Appellees for amount Appellees received in settlement of the direct actions against George Langdon, John Sawyer d/b/a Lakeland Plantation, and against Ruby Moore, Administratrix of the Estate of Roosevelt Head, Sr., deceased.
The facts of this case regarding this issue set it apart from any other workers' compensation case previously addressed by this Court. The claimants first filed their motion to controvert in 1975. Some time thereafter they filed their common law suits against the third parties Frederick Ahner and C.D. Kilgore d/b/a Vicksburg Truck Center as well as John Sawyer, the employer, and George Langdon and the estate of Roosevelt Head,[1] co-employees. A settlement and release agreement was entered into in 1980. In 1981 a hearing was held before the administrative judge, who allowed the employer and carrier credit against their worker's compensation liability for any sums received by the dependents in settlement of the third party actions and direct suits against the employer arising out of the accident which resulted in Rufus Head's demise. Following review by the full commission the administrative judge's ruling was amended whereby credit was allowed only for the amounts received by the claimants in settlement of the third party claim against Ahner and Kilgore d/b/a Vicksburg Truck Center. Credit was not allowed for sums paid by Sawyer, Langdon and Moore, administratrix of the estate of Roosevelt Head, Sr.
In addressing this issue it is necessary that we emphasize the purpose of the Workers' Compensation Act as found in Dunn, Mississippi Workers' Compensation § 2 (3rd Edition Supp. 1986) as follows:
This type of legislation [workers compensation] is generally viewed as a compromise. Because of the exclusive nature of the remedy labor surrenders the right to assert a common law tort action along with the attendant possibility of achieving punitive damages. In exchange it receives assurance that an award is forthcoming. Industry surrenders its three major common law defenses; contributory negligence, assumption of risk, and the fellow servant rule. In exchange it receives the knowledge that there will be no outrageously large judgments awarded to injured employees. The entire system was designed to insure that those injured as a result of their employment would not be reduced to a penniless state and thereby become dependent on some form of governmental public assistance (emphasis added).
See also McCluskey v. Thompson, 363 So.2d 256 (Miss. 1978).
The claimants ignore the purpose of the act when they claim not only the benefits provided through the Workers' Compensation Act but also damages from the settlement of a common-law suit against the employer and co-employees. The appellees contend they "pursued inconsistent claims because it was denied that they were entitled to either" i.e., worker's compensation benefits or recovery in a court of law. There is nothing wrong with pursuing both remedies when benefits under the Workers' Act are denied to be due as well as liability in tort is denied. However, the claimant may not collect on the tort claim against his employer or co-employee if the evidence shows that he is entitled to worker's compensation benefits arising out of the same occurrence.
Mississippi Code Annotated § 71-3-9 (1972) provides that the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer. This is more than a statement of law  it is a statement of public policy by the Legislature justifying the imposition of liability for payment of benefits under the Act and the taking away of the *477 employer's common law defenses. We have extended to co-employees this umbrella of immunity provided employers by statute. Brown v. Estess, 374 So.2d 241 (Miss. 1979); McCluskey v. Thompson, 363 So.2d 256 (Miss. 1978). The acts, other than those of willful negligence, of the employee merge into and remain solely the act of the employer. The employee's liability vanishes.
In this case, the claimants sought recovery, on the theory of tort liability, from the employer and co-employees and successfully entered into settlement agreements with them. This does not per se bar their recovery of workers' compensation benefits. Mississippi Code Annotated § 71-3-43 (1972) provides in pertinent part "No agreement by an employee to waive his right to compensation under this law shall be valid." However, workers' compensation is the exclusive remedy when an employee is injured while acting within the scope and course of his employment and the Workers' Compensation Act grants immunity from common law suits to the employer and co-employees.
In this case the liability carrier, which was not the same as the employer's workers' compensation carrier, although acting in the shoes of the employer entered into a settlement agreement with the claimants to "buy its way out of a possible action at common law." Public policy does not oppose the settlement of civil actions. However, in this instance the settlement agreement entered into was in effect a waiver of the employer's right to defend the common law action on the basis of the exclusiveness of the worker's compensation remedy. Rather than proceed toward expensive litigation this employer, through his liability insurance carrier, settled the tort claim for a nominal sum.
Recognizing the claimants' right to pursue an action at common law, where appropriate, we must now determine whether in the case sub judice the workers' compensation insurance carrier was entitled to a credit in the amount of the settlement entered into by the claimants with the employer and co-employees by the employer's liability insurance carrier. In so doing, we do not, however, change prior decisions of this Court holding that a claimant is barred from filing an action at common law, other than for an intentional tort, against his employer or co-employees for injury or death sustained while in the course and scope of his employment. Brown v. Estess, supra; McCluskey v. Thompson, supra. The worker's compensation laws are in derogation of the common law in that they replace traditional negligence actions for a no-fault system of payment to employees and their families for job-related injuries. By the exchange, the remedy of workers' compensation benefits, insofar as the right of the employee against the employer and fellow employees are concerned, is abrogated. Doubleday v. Boyd Const., 418 So.2d 823 (Miss. 1982).
In the case sub judice, the administrative judge found that the insurance carrier was entitled to credit, stating:
To sustain such contentions, in my opinion, would violate the basic intent of the Workmen's Compensation system. The most fundamental premise of Workmen's Compensation law is that the employer assume all financial responsibility for injuries sustained by workmen in the course of their employment regardless of fault, and that the employers are, in return, granted immunity from tort liability for on-the-job injuries. To allow an employee to sue an employer in tort alleging no employment relationship, effect a settlement of said litigation for an amount of money, and then to collect from the employer again under the theory that he was injured while performing services of his employment under the prevailing Workmen's Compensation law without the employer receiving credit would be contrary to the purposes of our Act. For the employer to receive credit for sums paid in said settlement against any established liability under the Workmen's Compensation Act is only fair.
The full commission found error with the administrative judge's ruling and based its decision on the specific language of the settlement and release agreement entered *478 into between the parties. That portion of the agreement which the full commission based its decision on reads as follows:
[T]hat the payments herein made are made for the purpose of protecting payors from common law actions; that the payments herein made will not be utilized to reduce or obliterate the workmen's compensation benefits (claimants) would otherwise be entitled to receive from John Sawyer, d/b/a Lakeland Plantation, and from Southern Farm Bureau Liability Insurance Company, pursuant to the Mississippi Workmen's Compensation Act.
.....
This agreement and the payments and releases evidenced herein shall not affect claimants right to proceed with his claims in the Mississippi Workmen's Compensation Commission or to seek to recover the fullest amount of compensation allowed by the Mississippi Workmen's Compensation Act.
Our statutes provide for a credit against compensation benefits of those sums recovered as a result of an action brought against a third party for damages for death of an employee. See Mississippi Code Annotated § 71-3-71 (1972). Our statutes, however, do not define third parties. The legislature by enacting § 71-3-9 which provides immunity for employers, as well as our case law which extends this immunity to co-employees, makes it obvious that an employer or employee is not a third party within the meaning of the act. Dunn refers to a third party as "One who is a stranger to the business enterprise that may be classified as `any other party' and subject, as a third party, to a common-law action in tort for negligence. Any other view would be inconsistent with the over-all intent and purpose of the act."
The intent of the legislature in enacting § 71-3-71 which allows credit to a carrier for sums received out of third party claims was to prevent the employee from obtaining a "double recovery for injuries sustained in a compensable accident". In Larson, Workmen's Compensation Law Volume 2 A § 71.20 it is stated:
It is equally elementary that the claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and the employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.
This being a case of first impression we refer to those courts which have addressed similar issues. In Petterson v. Daystrom Corp., 17 N.Y.2d 32, 268 N.Y.S.2d 1, 215 N.E.2d 329 (1966) the issue before the court was whether the workmen's compensation insurance carrier was entitled to a credit against the proceeds of a settlement of a wrongful death action instituted in a foreign state. In Petterson the settlement was the result of a suit brought against a co-employee. The New York Workmen's Compensation Law provided for a credit to be applied when the employee recovered for injuries caused by "another not in the same employ" the same as a third party in Mississippi. The court interpreted its workmen's compensation law stating "we are not bound to accord a literal interpretation to this language if to do so would lead to an egregiously unjust or unreasonable result" and allowed the carrier credit. That language is appropriate in this case.
This Court in rendering its decision has carefully scrutinized the language and intent of our Workers' Compensation Act and in so doing we find the full commission erred in amending the administrative judge's ruling with regard to the allowance of credit of the amount received in settlement from the employer and co-employees. *479 The language of the agreement compromising the employers statutory rights, if upheld, would be contrary to the purpose and intent of the Worker's Compensation Act in that it would encourage the filing of a tort claim in most workers compensation cases in the hope of receiving some settlement in addition to compensation benefits. This affronts public policy. To allow a claimant to successfully settle a common law action and also proceed to reap the benefits provided under our Workers' Compensation Act would in essence allow the claimant to receive a double recovery from the employer for the same injury which would violate the very purpose of our Workers' Compensation Laws. In rendering this decision the intent and purpose of the Act remains uppermost in our minds.
Mississippi Code Annotated § 71-3-9 provides that "[t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer... ." Having thus established that the worker could no longer sue the employer at common law for injuries compensable under the Act, the Legislature went on to point out the only persons the worker could still sue at common law, i.e., third parties. § 71-3-71 (1972). Then, in keeping with the purpose of the Act, the Legislature sought to provide that any common law recovery or settlement be applied toward the liability of the employer or compensation carrier. Id. Having stated that the employer was not amenable to common law suit for injuries compensable under the Act, the Legislature addressed the only persons against whom common law recovery could be had  third parties  and provided that any amount recovered from them was to be applied toward the employer's liability. We construe the intent of the Legislature to be that any common law recovery or settlement is to be credited toward the employer's or insurer's liability.
John Sawyer was primarily liable to the claimant. It was his obligation as an employer to purchase insurance to protect his worker's compensation liability.[2]
Liability can not be imposed on an employer under both common law and the Workers' Compensation Act as entitlement to one excludes the other; Rufus Head was either injured while acting in the course and scope of his employment thereby making Sawyer liable under the Workers' Compensation Act or he was injured while not acting in the course and scope of his employment thereby possibly rendering Sawyer liable under common law negligence liability. Here the claimant succeeded under both theories which is contrary to the intent of the Act.
The payment which was made by the liability carrier was made on behalf of the employer as are the workers' compensation payments. In Anderson v. Wachter, 283 Minn. 273, 167 N.W.2d 719 (1969) an employee was injured while riding home from work with his employer. Under the laws of Minnesota, if transportation was provided regularly, the employee was entitled to claim compensation under the workmen's compensation act. If he was covered under workmen's compensation he would have no common-law cause of action against his employer for negligence. After filing his negligence suit the employee filed for workmen's compensation to avoid expiration of the two year statute of limitations. The negligence action was dismissed without prejudice pursuant to an agreement whereby the employee would seek workmen's compensation benefits and if he failed to establish his right to compensation he would renew his action at common law. In settlement for this agreement the employee received $6,000.00 and preserved his right to file his workmen's compensation claim. In that case the referee determined the injury was compensable but refused to allow the insurance carrier credit for the $6,000.00 holding the employer was not a third party and therefore the compensation carrier was not entitled to the benefit of the amount settled for. On review by the Workmen's Compensation Commission it was determined that the employee was entitled to compensation and that the employer *480 and insurer were entitled to credit for the $6,000.00.
The Minnesota Supreme Court upheld the Commission's Order stating:
We hold that the payment made, at least in so far as it resulted in a benefit to the employee, relieves the employer on whose behalf the payment was made from so much of the obligation under the Workmen's Compensation Act as is represented by the employee's net recovery from the liability carrier.
.....
The payment having been made on behalf of the employer, the commission was justified in treating the payment by the liability insurer as a payment in behalf of the employer on account of whatever exposure he had arising out of the accident. It is true that the employee, had he pursued his common-law action to decision, might well have received a verdict greater in amount than the award to which he will be entitled under the Workmen's Compensation Act. But a claimant cannot use the power of litigation, given to him for the purpose of satisfying his just demands, as leverage for the purpose of securing payments depending upon which of the alternate processes afforded by the law he avails himself of first. 167 N.W.2d at 721, 722.
The court in Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597, 464 A.2d 1193 (1983), addressing the same issue and relying on Anderson v. Wachter in allowing credit against the compensation award for payment made in settlement of a common-law action against an employer, stated:
We believe this result achieves equity, always a prime target in matters of litigation, for precisely the reasons set forth in Anderson. It has the virtue of even-handedness. To the extent we treat the employer and the insurance company as one in the settlement issue, we treat them as one here. The employee receives no less than that to which he is entitled, albeit from two sources. Nor does he receive any more.
Here, too, we recognize that different carriers are on the different risks and the result is that the liability carrier is in fact paying a portion of the compensation award. This does not seem at all unfair when it is remembered that the liability carrier hedged its bet in the liability case by a voluntary payment.
We adopt the above reasoning and find that the sums paid in settlement of the common-law action against the employer and co-employees are to be credited against the employer's obligation under the Workers' Compensation Act.
The judgment of the circuit court is reversed and the order of the administrative judge reinstated.
REVERSED AND THE SEPTEMBER 29, 1981 ORDER OF THE ADMINISTRATIVE JUDGE IS HEREBY REINSTATED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Roosevelt Head was driver of the truck in which Rufus Head was riding.
[2] He could of course qualify as a self-insurer. Mississippi Code Annotated § 71-3-75 (1972).